**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | x |
| | : |
| HOWARD D. BALENSWEIG, | : Chapter 11 |
| | : |
| | : Case No.: 04-13299 (BRL) |
| Debtor. | : |
| | x |
| KEITH N. COSTA, AS CHAPTER 11 | x |
| TRUSTEE FOR THE ESTATE OF | : |
| HOWARD D. BALENSWEIG | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : Adv. Pro. No. 07-03246 (BRL) |
| KITRELL & KITRELL, P.C., | : |
| GARY A. KITRELL, ESQ., | : |
| RICHARD J. KITRELL, ESQ., AND | : |
| AGNES NEIGER, ESQ. | : |
| | : |
| Defendants. | : |
| | x |

**MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS'**
**MOTION FOR ORDER DISMISSING PLAINTIFF'S COMPLAINT**

Before the Court is the motion ("Motion to Dismiss") of Kitrell & Kitrell, P.C., Gary A. Kitrell, Esq., and Richard J. Kitrell, Esq. (collectively, the "Defendants") seeking to dismiss the complaint ("Complaint") filed in the above-captioned adversary proceeding ("Adversary Proceeding") by Keith N. Costa, as chapter 11 trustee ("Trustee") for the estate of Howard D. Balensweig ("Debtor").  The Defendants assert, *inter alia*, that the Complaint fails to state a claim upon which relief can be granted and that the Court lacks jurisdiction to hear the causes of action asserted.  The Trustee opposes the Motion to Dismiss claiming that the Court has subject-matter jurisdiction over a cause of action for malpractice, which the Trustee asserts has been sufficiently pled in the Complaint.  For the reasons set forth below and at oral argument, the

1

Court finds that it lacks jurisdiction to hear this matter and, accordingly, the Motion to Dismiss is granted.

## BACKGROUND

**I.      Events Preceding the Debtor's Bankruptcy**

The Adversary Proceeding and Complaint arise in connection with the dubious circumstances surrounding the drafting of a last will and testament and, depending on whom you believe, the purported existence of an attorney-client relationship between the Debtor and the Defendants.

The individual named defendants are lawyers associated with the law firm of Kitrell & Kitrell, P.C.  The Trustee alleges that on or about June 17, 2003, the Debtor, a retired octogenarian physician, entered into an attorney-client relationship with the Defendants to prepare a variety of legal documents including, *inter alia*, the drafting of (i) a last will and testament for the Debtor together with supporting affidavits (collectively, the "Will") and (ii) an affidavit and judgment by confession ("Confession of Judgment") in the amount of $2,566,057.00 executed in favor of Dr. Roger E. Mosesson.  While the facts and circumstances surrounding the nature of the Debtor's and Dr. Mosesson's relationship are highly disputed, it has been asserted that the two shared an interest in African art and that, among other things, Dr. Mosesson (a) wrote checks and gave cash to the Debtor over the course of nine years, which had not been repaid; (b) sold several pieces of African art to the Debtor for which he never received payment, and (c) loaned money to, and paid some debts on behalf of, the Debtor with the expectation of repayment.

The Trustee alleges that in exchange for a one-time payment of $500.00, the Defendants drafted the Will, which disinherited the Debtor's wife, sister and his sister's children and left the Debtor's entire estate to Dr. Mosesson, who was the Debtor's then single largest creditor. The Trustee further alleges that on June 18, 2003, Dr. Mosesson filed a special proceeding against the Debtor in the Supreme Court of the State of New York for the entry of the Confession of Judgment titled *Roger E. Mosesson v. Howard D. Balensweig* (Index No. 03111141) ("State Court Action"). The Confession of Judgment was subsequently entered by the clerk of the Supreme Court on that same date.

Although the Defendants vehemently dispute these allegations, according to the Trustee the Defendants simultaneously represented both the Debtor and Dr. Mosesson when they prepared and executed the Will and Confession of Judgment and negligently advised the Debtor to sign the Confession of Judgment when he had numerous defenses. This dual representation would eventually form the bases of the causes of action set forth in the Complaint.

Thereafter, on April 30, 2004, the Supreme Court, Justice Solomon, issued a decision and order vacating the Confession of Judgment on the motion of Joseph P. Carroll, Ltd. ("JPC"), one of the Debtor's creditors, for failing to provide adequate detail regarding the Confession of Judgment's underlying debts.[1]

With the Confession of Judgment vacated (and the Will revoked by the Debtor), Dr. Mosesson commenced this bankruptcy proceeding on or about May 31, 2004 through the filing

---

[1] While both the Debtor and JPC simultaneously moved to vacate the Confession of Judgment only JPC's motion to vacate was granted. Interestingly, the Debtor's motion, which was premised on his accusation that the Confession of Judgment was procured by fraud, was denied because the State Supreme Court held that (i) a separate plenary action was required, and (ii) the Debtor had failed to show that the Confession of Judgment was invalid or improperly filed. *See* Decision and Order Granting Motion to Vacate dated April 30, 2004, *Roger E. Mosesson v. Howard D. Balensweig* (Index No. 0311141), at pp. 5-9.

of an involuntary petition for relief under chapter 7 of title 11 of the United States Code ("Bankruptcy Code"). By order dated July 29, 2004, the case was converted to a case under chapter 11 of the Bankruptcy Code. Thereafter, the Trustee was appointed by order of the Court dated October 6, 2004.

## II.     The Mosesson Settlements and the Bankruptcy Proceeding

On or about August 23, 2004, Dr. Mosesson filed proof of claim no. 14 ("Mosesson Claim") in the Debtor's bankruptcy proceeding for the unsecured amount of $2,549,996.00. Thereafter, after an extensive investigation into Dr. Mosesson's largely unsubstantiated claim, on November 30, 2005, the Trustee and Dr. Mosesson entered into a stipulation settling the Mosesson Claim ("Trustee-Mosesson Settlement"). Under the terms of the Trustee-Mosesson Settlement, in exchange for a mutual agreement to terminate all pending litigation between the parties, Dr. Mosesson agreed to have his claim subordinated to all other allowed claims and further agreed, with certain caveats, to waive and release any right to receive future distributions from the Debtor's estate, which permitted the holders of all allowed claims (except Dr. Mosesson) to be paid in full. In return, the Trustee agreed that any balance of funds remaining in the Debtor's estate following a one hundred percent (100%) distribution to creditors and a distribution to the holders of administrative claims would be abandoned and interplead into the Bankruptcy Court, naming the Debtor and Dr. Mosesson as interested parties for purposes of determining their respective rights to those funds. The Trustee-Mosesson Settlement was approved by order of the Court dated January 10, 2006.

On February 9, 2007, the Trustee filed a motion ("February 9 Motion") seeking to implement the terms of the previously approved Trustee-Mosesson Settlement, make a one

4

hundred (100%) percent distribution to the holders of allowed unsecured priority and non-priority claims, and to make a *pro rata* distribution to administrative professionals. As stated by the Trustee, "[t]he only parties affected by this Motion are the Trustee and the professionals, all of whom have agreed to accept a *pro rata* payment of their fees from the Surplus…." February 9 Motion, at ¶ 7. The February 9 Motion further acknowledged that the sole remaining asset of the Debtor's estate left to be administered was the legal malpractice claim presently at issue against the Defendants. The February 9 Motion stated that in the event the Trustee was successful in prosecuting that action "any proceeds remaining after paying the Trustee's professionals would then become available for distribution pursuant to the Stipulation….Any estate professionals who may in the future seek to increase their *pro rata* payment from such future proceeds must first make proper application to this Court, on notice to all parties in interest." *Id*. at ¶ 11. The February 9 Motion was granted by order of the Court dated March 8, 2007.

On March 21, 2007, the Trustee commenced an adversary proceeding against the Debtor and Dr. Mosesson to implement the interpleader in accordance with the terms of the Trustee-Mosesson Settlement. After a substantial amount of litigation, including the filing of cross-claims and counterclaims by both the Debtor and Dr. Mosesson, the Debtor and Dr. Mosesson agreed to settle their respective claims to the remaining funds of the estate ("Debtor-Mosesson Settlement"). Under the terms of the Debtor-Mosesson Settlement, in exchange for mutual releases, Dr. Mosesson received a cash payment of $350,000, while the Debtor received the remaining balance of the funds in the amount of $150,000. The Debtor-Mosesson Settlement was approved by order of the Court dated August 20, 2007.

5

### III.   The Adversary Proceeding and the Complaint

On or about December 31, 2007, the Trustee filed the Complaint asserting claims against the Defendants for, *inter alia*, negligence, breach of duty of care and breach of contract based on allegations that the Defendants were "negligent in their rendering of professional services" to the Debtor.  Among other things, the Trustee alleges that the Defendants failed and/or neglected to advise the Debtor to "retain counsel separate from Dr. Mosesson," "failed to inform, notify and/or advise Dr. Balensweig of certain legal issues which would have avoided all of the claims and damages alleged in the instant Action," and "failed to advise Dr. Balensweig to refuse to sign a Confession of Judgment in the amount of $2,566,057.00 because he had numerous defenses to claim."  Complaint, at ¶ 34.

On February 11, 2008, the Defendants filed the Motion to Dismiss stating that the Trustee was improperly asserting malpractice claims that should be dismissed because (a) the Trustee was precluded under the doctrines of res judicata and collateral estoppel from asserting claims that were at issue in the State Court Action; (b) the Trustee released any claims the Debtor's estate had against the Defendants under the terms of the Trustee-Mosesson Settlement as well as the Debtor-Mosesson Settlement; and (c) prepetition malpractice and contract claims constituted "non-core" proceedings for which the Court lacked subject-matter jurisdiction.  *See* Motion to Dismiss, at p. 2.

The Trustee objects to the Motion to Dismiss claiming that (a) the causes of action asserted in the Complaint were not barred by res judicata or claim preclusion because the State Court Action was not a decision on the merits and the Defendants could not establish that they were in privity with Dr. Mosesson; (b) the Defendants were not released under the terms of

either the Trustee-Mosesson Settlement or the Debtor-Mosesson Settlement; and (c) the Court had subject-matter jurisdiction over the Adversary Proceeding as the matter was a "core" proceeding, or at a minimum, fell within the Court's "related to" jurisdiction. *See* Chapter 11 Trustee's Memorandum in Opposition to Defendants' Motion to Dismiss the Complaint ("Response"), at pp. 10-22.

## DISCUSSION

At the heart of this matter is whether this Adversary Proceeding constitutes a "core" or "non-core" proceeding. Section 157(b) of title 28 of the United States Code sets forth the categories of proceedings arising under the Bankruptcy Code that Bankruptcy judges have jurisdiction to hear. 11 U.S.C. § 157(b). Section 157(b) distinguishes between "core proceedings" which bankruptcy courts may "hear and determine" and for which bankruptcy judges "may enter appropriate orders and judgments," and "non-core" proceedings that are "otherwise related to" a bankruptcy case where bankruptcy judges may only issue "proposed findings of fact and conclusions of law" to the District Court absent the consent of the parties. 11 U.S.C. § 157(b), (c); *see generally Official Comm. of Unsecured Creditors of FMI Forwarding Co. v. Union Transp. Corp.* (*In re FMI Forwarding Co.*), No. 00-B-41815 (CB), 2004 WL 1348956, *3 (S.D.N.Y June 16, 2004); *Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld LLP*, 201 B.R. 635, 639 (S.D.N.Y 1996). Section 157(b) sets forth a non-exhaustive list of categories of "core" proceedings, which includes, *inter alia*, "matters concerning the administration of the estate." 11 U.S.C. § 157(b)(2). In general, however, a core proceeding must "invoke a substantive right" created by federal bankruptcy law that would not exist outside of a bankruptcy case. *MBNA America Bank, N.A. v. Hill*, 436 F.3d 104, 108-09 (2d Cir. 2006)

("Claims that clearly invoke substantive rights created by federal bankruptcy law necessarily arise under Title 11 and are deemed core proceedings."); *In re FMI Forwarding Co.*, 2004 WL 1348956, at *4 (same). In contrast, "non-core" proceedings "involve disputes over rights that…have little or no relation to the Bankruptcy Code, do not arise under federal bankruptcy law and would exist in the absence of a bankruptcy case." *Official Comm. of Unsecured Creditors v. Amlicke* (*In re VWE Group, Inc.*), 359 B.R. 441 (S.D.N.Y 2007) (quotations omitted); *see also Wechsler*, 204 B.R. at 639 ("A core proceeding must invoke a substantive right provided by title 11. On the other hand, non-core proceedings 'involve disputes over rights that…have little or no relation to the Bankruptcy Code, do not arise under federal bankruptcy law and would exist in the absence of a bankruptcy case.").

Regardless of whether claims are fashioned as malpractice, breach of contract, or breach of fiduciary duty, courts in this Circuit have "consistently found professional malpractice claims arising out of pre-petition misconduct to be non-core." *In re VWE Group, Inc.*, 359 B.R. 448; *In re FMI Forwarding Co.*, 2004 WL 1348956, at *4 (professional malpractice claim alleging accounting firm negligently completed valuation of Debtor's assets held to be "non-core proceeding"); *Esteva v. Nash*, No. 01-13341 (AJG), 2004 WL 5327181, *3 (Bankr. S.D.N.Y Nov. 24, 2004) ("[M]alpractice action is clearly a non-core proceeding."); *Wechsler*, 201 B.R. at 639-40 (chapter 11 trustee's malpractice, breach of fiduciary duty and breach of contract claims against law firm based on prepetition conduct was "non-core" proceeding); *In re Green*, 200 B.R. 296, 298-99 (S.D.N.Y. 1996) (debtor's third-party claims for malpractice, breach of fiduciary duty and breach of contract against law firm that provided legal advice for pre-petition real estate transaction at issue in adversary proceeding were "non-core").

07-03246-brl   Doc 17   Filed 04/01/08   Entered 04/01/08 10:59:19   Main Document
Pg 9 of 12


In this instance, the allegations set forth by the Trustee in the Complaint wholly involve events that preceded the Debtor's bankruptcy filing. The disputed Will was prepared, drafted, executed and revoked by mid-June 2003 and the Confession of Judgment was similarly drafted, executed and later vacated by April 2004. In contrast, the Debtor's bankruptcy proceeding was not commenced until May 31, 2004. The Trustee has not argued the claims asserted in the Complaint require the adjudication of issues or rights peculiar to bankruptcy law, rather, by the Trustee's own admission in the Trustee-Mosesson Settlement "[t]his bankruptcy case can be viewed essentially as a two party dispute between Mosesson and the Debtor, which dispute is based entirely on pre-petition events and largely on non-bankruptcy law." *See* Trustee-Mosesson Settlement, at p. 5.

The Trustee's sole basis for claiming that the instant action is a "core" proceeding is that the possibility of recovery of funds in the Adversary Proceeding may affect distributions to administrative and priority claim holders. However, permitting such a broad interpretation in this instance, where the allegations involve solely a pre-petition controversy and the Defendants have not filed a proof of claim, would create an exception that "would swallow the rule." *See Enron Power Marketing, Inc. v. Santa Clara* (*In re Enron Power Marketing, Inc.*), No. 014-Civ-7964, 2003 WL 68036 (S.D.N.Y. Jan. 8, 2003); *Orion Picture, Corp. v. Showtime Networks, Inc.* (*In re Orion Pictures, Corp.*), 4 F.3d 1095, 1102 (2d Cir. 1993) (pre-petition contract action brought by debtor against a party that had not filed a proof of claim against the bankruptcy estate was "non-core" proceeding that "may not be finally adjudicated by a non-Article III judge.") (internal citations omitted). While the Trustee goes to great lengths to distinguish the present case from previous decisions in this Circuit by stressing that those decisions generally decided

9

motions to withdraw the reference rather than motions to dismiss, the Court is not persuaded. The case law in this Circuit is clear – a prepetition cause of action for malpractice is not a "core" proceeding.

Likewise, as the Defendants have neither filed a proof of claim nor consented to have this Court adjudicate this matter, the Court may not hear this action as a "non-core" proceeding. *See Johns-Manville Corp. v. Chubb Indemnity Ins. Co. (In re Johns-Manville Corp.)*, 06-2099-bk (L), 2008 WL 399010, *8 (2d Cir. Feb. 15, 2008) (bankruptcy court could not extend "related to" jurisdiction where claimholders had not filed claims against the debtor and actions would have no effect on the bankruptcy estate); *176-60 Union Turnpike, Inc. v. Howard Beach Fitness Ctr., Inc.*, 209 B.R. 307, 313-14 (S.D.N.Y. 1997) (prepetition negligence action originally brought by debtor almost two years before it filed its petition in bankruptcy, where defendant had not filed a proof of claim or counterclaims against the bankruptcy estate, was not "related to" within the meaning of Sections 157(a) and (b)).

The Trustee contends that the outcome of this proceeding may have a significant upside to improve distributions to administrative and priority claimholders and the February 9 Motion provided that any proceeds that the Trustee might receive through his pursuit of this Adversary Proceeding would become available for distribution after paying the Trustee's professionals. However, it is not clear to the Court how any party aside from the Trustee or his administrative professionals might possibly benefit from the prosecution of this action. Indeed, it appears that the main incentive for the Trustee to bring this action is to recover some portion of fees, including fees for bring this Adversary Proceedings. The holders of all allowed claims save for Dr. Mosesson have already been paid in full in accordance with the Court's March 8, 2008 order

10

and the Trustee, the Debtor and Dr. Mosesson have all exchanged mutual walk-away releases with Dr. Mosesson (with certain limited exceptions) specifically waiving any right to receive future distributions from the Debtor's estate.  As all other creditors have either been paid in full or waived their right to future distributions and the Defendants have not filed a proof of claim, it seems clear as stated above that the Trustee and his administrative professionals (who previously agreed to receive a *pro rata* distribution for their fees in the February 9 Motion) are the only parties who might benefit from the continued pursuit of this action.  Extending "related to" jurisdiction would not be proper in this instance as no possibility exists for the outcome of this Adversary Proceeding to have any negative or detrimental impact on the Debtor's estate.  *See, e.g., 176-60 Union Turnpike, Inc.*, 209 B.R. at 313-14 (declining to extend "related to" jurisdiction where there "could be no conceivable detriment to the administration of the bankruptcy estate in a case where no claim has been asserted '*against*' the bankruptcy estate in the bankruptcy court.").

Therefore, as the outcome of the Adversary Proceeding will only have a "speculative, indirect or incidental" effect on the Debtor's estate the matter is not "related to" the bankruptcy estate and the Court lacks jurisdiction.  *See id.*, 209 B.R. at 313-14 (Although 'bankruptcy jurisdiction [is] to be construed as broadly as possible within the constitutional constraints of *Marathon*,' this Court finds that any controversy having 'only [a] speculative, indirect or incidental effect on the estate' is not 'related to' the bankruptcy action within the meaning of Sections 157(a) and (c)) (internal citations omitted); *Turner v. Ermiger* (*In re Turner*), 724 F.2d 338, 341 (2d Cir. 1983) ("Congress must have intended to put some limit on the scope of 'related to' jurisdiction.").

Accordingly, as this matter is neither a "core" nor a "non-core" proceeding, the Court need not decide the other issues raised by the Defendants in the Motion to Dismiss.

## CONCLUSION

For the reasons set above and at oral argument, the Complaint is dismissed and the Motion to Dismiss is granted.

IT IS SO ORDERED.

Dated:  New York, New York
         April 1, 2008

                                                             /s/ Burton R. Lifland
                                                           The Honorable Burton R. Lifland
                                                           United States Bankruptcy Judge